Rasheen Griffin vs. Harrisburg Property Services Mr. Ely May I please the court, I am Wayne Ely of Coleman Ely PC representing the appellant Mr. Griffin. I'd like to reserve three minutes for rebuttal if I may. Your Honor, this case boils down to the question of was the employer responsible for Mr. Kimball's behavior? And the defense has made some arguments in its brief that the harassment, which I can get into if you'd like a statement of the facts. I think we're familiar with the facts. Okay. They argue that the harassment was in fact not severe, that it was in fact not pervasive. I can get into the Rogers case that Judge Randolph cited. They lost on all that, right? They did. They lost it there and I think they should lose it here. And as Judge Rambo correctly said, it all comes down to one factor. Are they responsible? So I'm going to start by telling you why they are. And we begin with two cases Judge Rambo didn't discuss but that we need to talk about today. Ellerth and Farragher. Excuse me? Ellerth and Farragher. The 298 Supreme Court cases. Please. I have a question. Is this case really about whether the employer was liable or whether the steps that it took were reasonable under the circumstances? Your Honor, the answer to the question is actually twofold. The steps that they took are not relevant to the question of whether the employer is liable for Mr. Kimball's conduct. All right. Forget about that. I'm asking is the question whether the steps that they took were reasonable or not. Assuming that they were liable. Assuming that they were liable, the steps that they took upon learning of the conduct have no bearing on whether or not this states a harassment claim on behalf of Mr. Griffin, based on the statements of Mr. Kimball from in June, August, and October of 2007. I'm not sure I understood your answer, so I'm sorry. And if Judge Weiss, I apologize if you have a follow-up too, but I didn't understand the answer. Are you saying that regardless of the steps that were taken, there's still liability? I do, Your Honor, and I believe that Farragher and Ellerth support that. And I could quote briefly that the decision in those cases both say, quote, an employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate or successively higher authority over the employee. I would say, assuming that the employer is liable, there's two parts to this case. First, the holding that the employer was liable, and second, that the steps it took were reasonable under the circumstances. I'm asking you only about the second part. We don't believe the steps were reasonable under the circumstances, but I would also submit that that has no bearing on the vicarious liability for the harassment committed by Mr. Griffin. I've assumed that there was liability on the part of the employer, so that's not an issue as far as I can see in my hypothetical. Assuming that, again, the steps they may take once they learn of it cannot go back in time and repair what's occurred in the incidents of harassment that we've outlined from June to October of 2007. And their only option- Does the law provide any remedy for harassment in the past? It does if it's vicarious liability against the employer along the lines of what we see in Ellerth and Farragher. And just for the record, racial and sexual harassment claims are interpreted under the same standards. Ellerth and Farragher have been cited for that proposition. The most recent Supreme Court case pointing that out that I could find was National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 at footnote 14. Specifically saying- You keep going back to liability, and I'm saying what about the damages? What about the steps the employer took here? The only affirmative defense that the employer had available to it under Ellerth and Farragher is one that was not pleaded in this case. There's a two-part defense that they can set forth. Number one, they exercised reasonable care to prevent the harassment. And second, that the plaintiff failed to reasonably take steps to follow their procedure, whatever it is. That defense was never pleaded in their affirmative defenses, and you can look at 41A to 43A in the record to see that. They pleaded, I think, 11, 12, or 13 affirmative defenses. None of them address what Ellerth and Farragher require them to plead, and then later to prove by a preponderance of the evidence to get out from under liability. There's no other means by which they escape liability. They've not pleaded that defense, they haven't proven that defense, and they haven't even raised it in their summary judgment motion. There's nothing in the record about it. Mr. Kimball was clearly a successively higher supervisor. You can see evidence of this in 81A of the record. He'd been a supervisor for three years. He was referred to as a Sierra One-level supervisor. He actually was in charge of two locations at the same time and supervised, I think, six or seven employees. Well, is it that the district court, Mr. Ely, correctly lay out the three possible bases on which there could be liability on the company's part for what the supervisor did? The district court laid out three of them and said two of them just don't apply here. The only one that could possibly apply is the third one, and I'm trying to find exactly how she framed that. I think you're at page 14 of her opinion. Page 14, right, where the harassing employee relied upon it. No, excuse me, where an employer was negligent in its fair to discipline, fire, or take remedial action. That's the analytical construct she sets up and then proceeds to answer the question on that basis. So my first question to you is, is her analytical construct correct? It is not. And where is she flawed? She's flawed in citing NABE, which is on page 13 of her opinion, and BOTIN because both of those are pre-Ellerton and pre-Farrager cases. Did Ellerton and Farrager change what she contends are the three bases upon which employer liability could be founded? They actually discussed, I believe, all of the same levels of liability. So they're those three things, right? They are. Okay. And is she correct in saying the tort one is out and the third one, I should have kept my page open to 14, the harassing employee relied on apparent authority, those things are out. Was she correct in saying those are really not at issue, we're just talking about negligence in fair to discipline, fire, or take remedial steps? I don't believe that was correct on the judge's part. With all due respect to Judge Rambo, I think the second one is closer, where the harassing employee has relied on apparent authority or was aided by the agency relationship. I actually spent a good bit of time thinking about this and trying to reconcile that with Ellerton and Farrager. And the closest I can get is by laying out that if a supervisor is successively hired, there must be vicarious liability on the part of the employer. In the absence of the affirmative defense I outlined earlier, it seems that number two on page 14. Do you have any authority for the proposition that by hiring, you necessarily have apparent authority for whatever that person does? Because that's really what your argument is, right? It is. He was hired, therefore he had apparent authority for whatever he did, including the harassing behavior, right? Well, it is my argument, but I would respectfully say the Supreme Court is saying the same thing in both Ellerton and Farrager. What do you point to in those cases for that proposition, that it exists du jour no matter what? Because if that's true, doesn't it make the first – I mean, why would you ever have an analytical construct that maintains three separate things? If by virtue of being an employer – excuse me, a supervisor of the employer, you automatically have apparent authority for everything, that swallows up everything else, doesn't it? Well, at least we know it covers harassment, because the Supreme Court was unequivocal in its statement. Provided the supervisor was immediate authority, which there's no dispute that this gentleman, Kimball, had immediate authority or successively higher authority over the employee, then that is all that is required if there is harassment, which in this case I believe has been established. So again, they did not plead the affirmative defense they would have to plead to get out from under the liability they face under Ellerton and Farrager. And unless Your Honors want to hear anything else, I'll rest on the brief or answer any questions about any other aspects of my argument, and I'll be back up, I guess, for rebuttal. Okay. Thank you very much, Mr. Ely. Thank you, Your Honors. Mr. Hare. Good morning, Your Honors. I think it's still morning. May it please the Court, John Hare for the defendant, Harrisburg Property Services. Your Honors, the argument is that because he is a supervisor with immediate authority over the plaintiff here, HPS is strictly or automatically liable for what Mr. Kimball did, and that simply is not the law, Your Honors. Why don't you speak? I mean, Mr. Ely says, I think he's saying, in effect, that Meritor has just been modified by Ellerton and Farrager . . . Ellerton. Excuse me. Yeah. Ellerton. Sorry. Thank you. By this later Supreme Court precedent, and therefore, if we're looking at that, as we should and not to Meritor, Judge Rambo got it wrong. How is he wrong in that? Actually, Judge, I think he is right about that. I think those Supreme Court authorities from 1998 did modify the prior law. I think they did. And Ellerton, in particular, Burlington Industries v. Ellerton, did say that an employer is strictly liable for harassment by a supervisor. It did say that. What it didn't do is define what a quote-unquote supervisor is, and that's what this court did in the 2009 Houston case, where it went on at great length to discuss because, as Your Honor suggests, when someone is not an upper-level management supervisor, when they are simply, as the Houston court said, a supervisory employee in the labor force, it would be unfair to impute anything they come across, do or know of, to the employer. So the Houston court said, look, we know Ellerton didn't say what a supervisor did. You searched the country. No other circuits had defined what a supervisor is in this context. So in Houston, you said that the supervisor must be a, quote, sufficiently senior in the governing hierarchy, an employee in the governing body of the entity, as opposed to merely a supervisory employee in the labor force. Mere supervisory authority over performance of the work is not enough. You must have a mandate to regulate the workplace environment generally. You must be able to discipline, hire, fire, change employment status. And by way of example, an HR person, a person in the HR department who is specifically hired to deal with workplace environment issues. Certainly HR is not the only department that could happen. So if we look. Where are you reading from, please? I'm sorry, Your Honors. That is page of the Houston decision, pages 106 through 108. Thank you. Yes. And so then we look to the record in this case to determine what exactly Mr. Lee was not a management level employee. All of the undisputed testimony in this case is that he is what's called a shift supervisor. Eighty percent of his job is being a security officer. He does exactly what the people he supervises on his shifts do. He walks around and he makes sure that the various locations are safe. He cannot hire or fire. The testimony specifically was the security managers. He is a security supervisor. The security managers, Mr. Shull and this gentleman identified as Danny, were the security managers who could hire and fire. He consistently distinguished himself and supervisors from, quote-unquote, management. In fact, he said one time when plaintiff was late, he went to management and went to bat for plaintiff so he would not lose his job, indicating two things. First of all, he doesn't determine the decisions about hiring and firing. And secondly, he is not management by definition. And remember, plaintiff here went to human relations, as other employees told him to do, because he knew, and this is exactly what happened in Houston, he knew that human relations were the management folks in this corporate context here. Did Judge Rambo approach this incorrectly then in not looking at the later precedents? I mean, is there an analytical error here? I think there's an analytical bridge, Your Honor, that is not defined. She clearly got to the right place. So once we determine that someone under Houston is not a management level employee, then you go exactly where Judge Rambo did, and you go to determine the adequacy of the investigation and remedial actions that the employer took. And that's exactly what she did and found, and there's been no argument here to the contrary, other than those things are irrelevant, that the investigation wasn't inadequate. It was immediate. We learned this on a Friday, start on a Monday. So to answer Your Honor's question, she got to the right place. She didn't go into detail, and I think, frankly, Judge didn't mention this distinction between, quote, unquote, supervisors and upper level managers, which are necessary to avoid this analysis of the adequacy of the investigation. I mean, so she went there, and I think this is what Her Honor, Judge Weiss, was getting to also. Is that a question of law or of fact, whether somebody is a supervisor of the character that Houston is required? In the first instance, it's a question of law, Your Honor, because the court has to assess whether there's a genuine issue on the subject. And I'd go back to Houston, because we really think that case is on all fours. Those folks, the harassers in Houston, had certain supervisory authorities for the work, for the work that was being done on this industrial project. They had certain supervisory authorities. So you have to resolve the question of fact first. What are your responsibilities to get to the question of law, whether you qualify as a supervisor and, therefore, implicate liability? As a threshold matter, to determine the legal sufficiency to proceed to trial, that's right. The district court has to determine, as a matter of fact, what this person's job function was. So by bypassing an analysis of Ellerth and Farragher, is that error that we need to address? I don't think it is, Judge, because you can, of course, affirm on alternative grounds. And I frankly don't even think it's an alternative ground here. She just went to the analysis that you get to when you apply Houston and determine that someone is not upper-level management, which this gentleman clearly was not, and that is you look at the investigation and whether or not the investigation stopped the conduct. Do we have to assume that there's no material issue of fact about that to get where you want us to go? I don't think so, Judge. I think you have de novo standard of review, plenary review. The record is replete with these instances of what this gentleman did in his conduct, in his living, Mr. Kimball. So I don't think you have to assume it, Judge. I think the record is ample to support the finding that he was not an So if there is post-October, I guess, the complaint of activity is, I think, June to October. So to the extent that the investigation is done by, I guess, Ms. Simmons and then there's any post-investigation activity, that's judged by the Ellert-Faragher paradigm. That is correct, Judge. Yes. And your position is that there's nothing that sort of rears its ugly head to be put into that paradigm? That is correct, Judge. If you look at what plaintiffs said happened versus what the evidence shows as the actual statements from the people involved, you see that after this investigation and after the remedial action and the company-wide diversity training, et cetera, there was no further harassment. He pointed to the continuation of, for instance, the disciplinary point system. But his own testimony was that was about the in-crowd versus the out-crowd. It wasn't about gender. It was not about race. He talked about racially biased scheduling. And, of course, in the background, we have this whole issue of what was pled, Your Honors. Only three statements were ever pled. All of this other stuff came in in a response to summary judgment, and Judge Rambo had a problem with that. But even if you assume that all of that stuff comes in, there's no suggestion when you actually look at the witnesses' statements, and they are laid out at great length in this record between pages 532 and 542, none of this conduct happened after this diversity training. Let me ask you this question. I think one of the points that Mr. Ely brought up was that there was you didn't specifically plead Ellerth and Farragher among your affirmative defenses. The three incidents that you allude to are severe, meet the severe and pervasive, so that, you know, that's the basis, if I've understood his argument. Because you didn't plead Ellerth and Farragher, that should be the basis for him to get home. Yeah, what those cases say, Judge, is that a pleading and demonstrating at the summary judgment stage with evidence, not just saying, but demonstrating a basis for employer liability is part of their prima facie burden. This is a demurrer argument. This is not an affirmative defense to say that they have not demonstrated anywhere in this record a basis for employer liability. And the basis of your argument is that it's their burden to plead and put in evidence to show that Mr. Kibble was a supervisor of the Houston kind. Is that right? I think they either at least have to tee the issue up. That's part of their threshold burden to make a prima facie case, and once we challenge it on summary judgment by saying under the Houston standard, and we cited Houston, that the investigation is adequate and the remedial action is taken, then they've got to come back with something other than affirmance. They've got to point to evidence demonstrating they can satisfy that fifth element, which is where the district court hung her hat here in awarding summary judgment. They have to come back to say somehow that they get past that, and the argument does not now seem to be that the investigation was inadequate or that the remedial action didn't work, but that suddenly this gentleman doesn't meet the LRF standard when the Houston standard is a relevant standard. Simply by calling somebody a supervisor does not meet that standard, and I think Houston is really clear on that. So they've got to get past that. To the extent that I have any time left, I would just mention a couple other things because I'm sure we're going to hear about alleged conduct that occurred afterwards like discrimination in scheduling. First of all, this again indicates that Mr. Kimball was not a management-level employee because he didn't schedule. That was the managers, the security managers. But in any event, we did investigate that. Can I just take you one step back? I'm sorry. Sure. On remedial action, the only remedial action was disciplining Mr. Kimball and moving Mr. Griffin to 333. Is that right? And requiring mandatory diversity training for every single person who worked in that security department. That is correct, Your Honor. I'm sorry. Go ahead. No, that's okay. And in any event, with respect to this question of whether scheduling was racially discriminatory, our HR department looked into that. There's been no evidence to contradict this testimony and found that it was, as she said, extremely evenly divided, if not 50-50, 60-40, because people prefer different locations and things like that. So with respect to this targeting, the retaliation claim, and there's also an issue about whether the district court should have allowed plaintiffs to plead retaliation after, you know, when they first sought leave to plead in their response to a motion for summary judgment after discovery is closed, after the amendment period is gone. Pat Shaw, the security manager, said plaintiff used two supervisors, Doug Brown and Ralph Shaw, to target him to make sure that he was on his, quote, P's and Q's. This went to this rebuttal claim that was not allowed in the case and properly so. Additionally, Mr. Brown was only plaintiff's supervisor for a couple of weeks in 2008, and he quit rather than harass the plaintiff, according to plaintiff's own testimony. So he didn't harass him. Plaintiff also admitted that the manager and Mr. Brown never, in his words, by his own definition of harassment, never harassed him. And with respect to Mr. Shaw, again by plaintiff's own testimony, all he said is if you don't like how things are run around here, you should quit, or if you don't like the point system, you should quit. Certainly rough statement. No doubt about it, Your Honors. But as this court has repeatedly said harassment-wise, do not legislate civility in the workplace. That is not a racially motivated statement, and the district court could have so found, Your Honors. So unless Your Honors have any questions. Thank you. Thank you. Mr. Ealy, your rebuttal, please. Your Honors, I would submit that if Houston stands for the proposition that's been cited for by the defense, then it's at odds with Ellerth and Farriger. Ellerth and Farriger are clear that the policy reason for subjecting an employer to vicarious liability for a supervisor with successive authority above the plaintiff is to encourage forethought by employers. Well, sure, but how is that at odds with Ellerth and Farriger? Is it Farriger or Farriger? I think it's – I've always said Farriger. Gurr. Gurr. Okay, we're saying gurr here. Farriger. But if Houston did what your learned opponent is saying it did, which is apply that Supreme Court precedent and say supervisor has a specific meaning, how is that inconsistent with as opposed to a reflection of an understanding that this court expressed about the meaning of the Supreme Court statements? Because the process coaches and the machine operators in the Houston case had immediate authority over the employee and had the ability – I'm talking about the Houston facts now. Right. To take that person to management, recommend they be fired. And turning from the case law for one second back to the facts, this gentleman, Kimball, was referred to as a Sierra One supervisor. And more significantly for purposes of this case, and this may resolve the Houston issue in a simpler fashion, he was the supervisor on the third shift. Third shift, as we all know, is a late-night shift. There's no HR person in his or her office at that time of night. There's no CEO of the company. They're all home watching TV. They're all home in bed. Are you saying that you have to have management-level supervisors on duty 24-7 or otherwise low-level management folks are necessarily supervisors of the type the Supreme Court envisioned? Somebody has to be a supervisor. You've got six to seven employees. At all times, somebody who is qualified as a supervisor has to be on duty. That's the position. Not always. But in this case, there was somebody. Well, I agree with you that HR probably doesn't satisfy Houston or any other definition of supervisor. To me, HR is kind of separate and apart. However, Judge Smith does say on page 107 of Houston, and I'll read slowly, it's in keynote six, we thus conclude that an employee's knowledge of allegations of co-worker sexual harassment may typically be imputed to the employer in two circumstances. First, where the employee is sufficiently senior in the employer's governing hierarchy or otherwise in a position of administrative responsibility over employees under him, such as a departmental or plant manager, so that such knowledge is important to the employee's general managerial duties. So let's just talk about Kimball with that definition in mind. That's the one instance. Again, I think Kimball. I'm sorry, Your Honor, go ahead. I'm sorry. This is the one instance. He has another, but let's discuss this one. Well, I think Kimball would fit that definition. And I can point to some evidence of that record. Yes, how so? He was asked, and there was some reference to, well, he's usually a security guard. He just happens to be a supervisor one day out of, like, four or five. That's not correct. His testimony was, quote, I'm always a supervisor, 86A, page 33. I mean, he was. That was post-discipline? The position was post-discipline, but he was a supervisor. He was a supervisor for three years as of, I think it was, 2009. So he was a supervisor well before any of the incidents in 07, any of the harassment. I don't think it's disputed that he was given the position of supervisor at the time he committed the harassing acts. You've got someone who is the only person these guards can go to on third shift. He's the only person who's going to show up. And, by the way, there's more than one area he supervised. It wasn't just one place. There were two referenced in his deposition. What would we make of the words departmental or plant manager? Going back to Houston? Sure. I mean, that's the standard that Judge Greenaway has posed for you to speak to, and that's the language from our binding precedent. When he talks about the seniority level that's commensurate with being called a supervisor for liability purposes, it says departmental or plant manager, so that such knowledge is important to the employees. I think that Kimball would be analogous to a departmental manager. There was no one else on the third shift who would fill that role. And in that particular shift, he is the manager. There's nobody else working that time of night. At that time of night, there are seven employees. Six or seven. I'm not going to quibble about that. And he's the guy. He's the guy. I'm the supervisor, was his quote. And, again, I think if you look at Eleuth and Farriger, which incidentally don't just refer to employees who find out about harassment and have a duty to report it. It refers specifically to a hostile environment, quote, created by a supervisor with immediate authority. This gentleman, Kimball, fits that definition. And to that extent, if Houston is read that way, it has to be brought back in line with Eleuth and Farriger, which I would submit are broader. The plant manager distinction, all of the things gotten into in Houston, are not discussed by the Supreme Court's opinions in Eleuth and Farriger, and they're very clear. In my opinion, they're very clear. I have a question. I'm a bit confused here. What would be the difference in damages or relief that the plaintiff would be entitled to if your position on liability prevails? Well, he'd be entitled to any damages from pain and suffering that he suffered as a result of the harassment. He testified in the record that he was offended by it, that it troubled him, and that's understandable that it would do so. I think a clear statement of that effect would really have helped the briefs in this case. I think you're right, Your Honor. Okay. I do see my time expired unless there's any other questions from the panel. Not from me. Judge Weiss, anything else from you, sir? No. All right. Thank you very much, Mr. Ely. Thank you, Your Honor. And we thank both counsel for a well-argued case.